Good morning, and may it please the Court. My name is Todd Curry, and I represent the appellant, James Roth. I would like to, if I may, reserve two minutes for rebuttal. Sure. I'd like to start by addressing the statute of limitations and the relation back doctrine. There's important policies at stake here with respect to the statute of limitations that applies here. The statute here is under Federal Rule of Bankruptcy Procedure 4007C, and it's a very, very short statute. It requires a plaintiff to sue a defendant in bankruptcy within 60 days of the creditor's meeting. That creditor's meeting usually occurs within just a few weeks of the bankruptcy filing. So the statute is about 90 days from the bankruptcy filing. Now, there's important policies that underlie that statute, which are that a debtor is entitled, and creditors too, frankly, are entitled to have the debtor's financial affairs resolved quickly. And issues of Fresh Start are also bound up with that, but the important point is to resolve the financial affairs quickly. And in Chapter 11, which is what this case, Mr. Roth's case, was a Chapter 11 case, there's an added policy, which is to have the debtor propose and confirm a plan of reorganization to address his, her, or its creditor's claims promptly. Now, if you have non-dischargeable claims lurking about which have not been asserted, the problem you have is the debtor in Chapter 11 can't really effectively propose and confirm a plan because there may be these claims that survive the bankruptcy. So it benefits creditors as well to stick with the statute of limitations and enforce the very strict and short statute of limitations under Rule 4007C. Now, one thing I want to point out is that the appellee incorrectly states in her initial brief at page 22 that she attached to her original bankruptcy complaint a copy of the state court jury verdict. That's absolutely incorrect. The record on this is Appellant's Excerpts, pages 1 through 16. That's the original complaint. The jury verdict is not attached. Is that significant for some reason or other? It's very significant, Your Honor, because in the original… Because she refers to it, a true and correct copy of the judgment is attached. The judgment, that's important. The distinction here between the judgment and the jury verdict, Your Honor, is very, very important. The judgment itself doesn't have any facts. It just talks about the amount of money involved. It doesn't dig into the facts or what the basis was for the judgment. The jury verdict does do that. The jury verdict is detailed. It has questions to the jury, the jury answers those questions, and there's a lot more in that jury verdict. The judgment itself has virtually nothing, and that's important because the complaint itself, the original complaint itself, has no facts either. So we have the complaint, the judgment, there are no facts alleged. So what's happened here and what Appellee has done… Well, she alleged that the judgment is based on fraud. And, in fact, the judgment is not based on fraud. The judgment is for fraud or defalcation while acting in a fiduciary capacity. And, in fact, the judgment is not based on fraud. Judgment results from willful and malicious injury. She didn't lay out all the facts, but she sure tips off what she's complaining about. She refers back to that state court judgment, Your Honor, with respect to three areas. She talks about the Section 523A2 claims, which are fraud. Then she talks about the A4 claims, fraud or defalcation. Then she talks about the A6, willful and malicious injury claims. The important point here is that her original complaint was based solely on the judgment. That judgment did not have any fraud-based claims underlying it, which we can see if we do go behind the judgment itself, which I submit we cannot, but if we do go behind the judgment to the jury verdict, we note that there are no fraud claims. No fraud claims whatsoever. So, at a minimum, with respect to the 523A2 bankruptcy fraud claim, where she says, my complaint here is based entirely on the judgment, given that that judgment in no way dealt with any fraud-based issues, at a minimum, her fraud cause of action in the bankruptcy court cannot relate back to her original complaint. One can argue about the other claims, but that fraud-based claim, the $2.8 million of this $2.9 or $3 million judgment, absolutely is not encompassed by the state court judgment, which, again, is what she entirely based her original complaint on. What was the core of the Superior Court complaint on which she prevailed? The core were breach of fiduciary duty claims, Your Honor. Primarily, breach of fiduciary duty claims. There were some emotional distress claims as well. There was no hint of fraud or misrepresentation in connection with the fiduciary duty claim? No, Your Honor, and in fact, none. None, and I will point out that Eppley correctly points out that in her original, her first amended complaint in the state court, did have a Roth Montezuma partnership fraud promise without intent to perform claim. So the complaint there did have that, but the key point here is, it was dismissed before the trial concluded in the state court. So as a result, we know for a fact that the state court judgment could not have included that Roth Montezuma partner's fraud-based claim because it was dismissed. So when the plaintiff then comes to the bankruptcy court and says, my claims here are based entirely on that state court judgment, we know that her original bankruptcy complaint cannot be dealing with those Roth Montezuma partners' fraud-based claims. So at a minimum, those claims are time-barred, and the relation-backed doctrine does not apply. So she files an amended complaint, and it's quite, now she has counsel. Yes, she has counsel. And it's a fairly detailed complaint in the adversary proceeding. Yes, and that complaint was filed in March of 2011, which is a full seven months after the deadline for filing non-dischargeability claims expired. So we have a clear violation of the policies behind the statute of limitations rules, as well as the relation-backed doctrine, which is an exception to the statute of limitations, but it's not meant to swallow up the rule itself. And her first claim for relief in the amended complaint is for 11 U.S.C. 523.82a, false pretenses, false representation, and actual fraud. And that is the time-barred Section 523.82a fraud claim, which cannot relate back to the original complaint because the original complaint was based only on the judgment. And again, we know the judgment is not based on any fraud-based facts. That's a pretty fine reading of the relation-backed doctrine. I'm not sure I understand, Your Honor. Well, the relation-backed doctrine is pretty generous. Well, it does, under the Vail v. Felix case, as well as similar Ninth Circuit cases, which don't apply the doctrine exactly the same, the later asserted claim must be based upon, rely upon the same type of evidence, facts similar in type and time. And in this case, we know that the state court judgment did not have anything to do with justifiable reliance, which is a fraud-based fact. It doesn't have anything to do with a fraudulent intent, which are key points of the fraud claim. So the amended fraud claim deals with facts that are not in any way implicated by the original complaint in the bankruptcy court. That, I think, is perhaps one of the, well, actually the most important point in the appeal, is that the amended complaint deals with new facts that were not anywhere dealt with in the state court. And particularly, the elements of a fraud claim are not the same as the elements that were involved in the state court judgment. Well, she's basically talking about the same transaction and the same bundle of facts that occurred initially, the initial complaint that was set forth there. Actually, it's not considered to be the same transaction, Your Honor, because under the Vail v. Felix test, we have to look at, to go behind, what is the same transaction or occurrence? We must look at what is the evidence that's going to be used to prove the claim. In the case of the state court, we have the breach of contract and breach of fiduciary duty claims related to Roth Montezuma Partners. Those are very different facts to prove those claims compared to a fraud-based Roth Montezuma Partners claim. For example, breach of contract simply requires a contract breach causation and damages, whereas a fraud claim, the later asserted fraud claim, requires justifiable reliance, fraudulent intent, fraudulent misrepresentations, which are entirely different evidence as well as entirely different time. The breach of contract occurs much later in time, whereas the fraudulent misrepresentations occur at the very outset of the case, when promises are made before the contract is even performed. So we have facts of very different time and type involved in the first amended complaint compared to the original complaint. And as a result, at least with respect to the fraud claim in the bankruptcy case, that does not relate back to the original complaint in the bankruptcy case. Thank you. I'll reserve the last few seconds that I have. Thank you. Okay. I'll give you a minute for rebuttal. Okay. Thank you. Thank you. Good morning, Your Honors. I'm Scott McMillan. I represent Aneath Bikaitis. I was bankruptcy counsel in the underlying action as well. To address the first suggestion that I have been accused of misrepresenting in the record, page 24 of my brief makes no mention of a verdict attached to the judgment. It's plainly that there was a judgment attached to the complaint. I didn't suggest otherwise that there was a verdict attached. I don't know where that was coming from. With respect to the statute of limitations, the issue here, the rules of pleading are very broad, and particularly for a pro se plaintiff when they're filing an action in a bankruptcy court, even broader. As we've cited in the Dominguez case, the adversary complaint can even be, has even been interpreted on something that doesn't have the words complaint. It would be an objection. The bankruptcy court will interpret that as a complaint to satisfy the 60-day limitation. The rule that Mr. Curry cites to 4004, it really is not, that is not a statute of limitations. It's a procedural limitation, and it goes to, it's not a substantive bar, such as one that would arise under a statute of limitations. Further, as we pointed out in our brief, Mr. Curry did not move to dismiss. This went all the way to trial. There were pre-trial orders, or there was a trial order on this. So we've set this forth in the briefs that this matter is particularly weighed in our opinion. Now, as to the substance of his claims, that there were somehow some new matters that came up. Ms. Pikades attached the judgment. The judgment was very specific about the claims that there was, that she was relying on, that she was seeking non-dischargeability against. She cited the statutes, the three bases, 523A2, 523A4, and 523A6. She said in gross, these are, these claims as, under Cohen versus de la Cruz, these were claims, these are non-dischargeable. Mr. Roth had notice, because he had just gone through a trial. He had just gone through an appellate briefing, an appellate case in front of the 4th District Court of Appeals for the Appellate Courts of California. And so there is no claim, there can be no reasonable claim that he was somehow surprised, because he wasn't. So what we have here is we have a hyper-technical reading of the pleading standards, which I believe is not consistent with the rule of law. So what he does say on the merits, though, is that the Superior Court judgment was not based on fraud. Yes, correct. But the Ninth Circuit, under the Jersich case, the Banks case, and the Rissow case, where a contract breach is accompanied by conduct that is tortious. When that comes to the bankruptcy court, the bankruptcy court can make a determination whether that is, that contract breach, that tortious contract breach, satisfies 523.82, 523.84, or 523.86. In this case, what happened is we had a trial, Mr. Curry and I, and Mr. Roth testified. And Mr. Roth said that he didn't intend for her to be a partner. He never intended for her to have a part of Roth-Montezuma partnership. So his contract that the jury found was breached was also a false promise. And since the jury had already liquidated the damages at $2.8 million, Mr. Roth then has the claim for false promise, which satisfies 523.82, is satisfied. So then we have the issue of the justified reliance. The court also determined, and Mr. Roth never argued with this, that this couple, Ms. Plakaitis and Mr. Roth, they were fiduciaries to one another. And so Ms. Plakaitis had stayed on to be part of this Roth-Montezuma partnership venture. She had relied, and her reliance was justified. Why shouldn't she trust her fiduciary? So they worked together for, what, 20 years? I think it was from 1980 to 2007, so almost 30 years, 25 years at least. And they were romantically involved, engaged to be married, broken up. And then later on, Deborah Roth came along and built a new wife. And so that was that. There was a downward spiral from there. Unless the court has any other – oh, I want to go into my case. Oh, yeah, so you have a cross appeal. Yes. Right, I'm sorry. Yeah, you take a minute or two to address, if you wish. Yes, Your Honors. Okay, so the – excuse me. Your Honors, one of the issues that happened that we take exception to, the adversary plaintiff appellee cross appellant, is that the court found breaches of fiduciary duty and assigned damages amounts to that. The court found violations of non-dischargeability under 523A2 related to the Roth-Montezuma event. The court found that there was non-dischargeability for intentional infliction of emotional distress, intentional interference, and found non-dischargeability under 523A6. The amounts that the court awarded as non-dischargeable have been liquidated. Those were liquidated amounts. Those were liquidated claims that had come from the judgment. But associated with those claims, there was also claims for an ancillary component of those claims in that there was punitive damages, there was attorney's fees, and there was also costs. And the court improperly, which I believe the bankruptcy court erred, because it could not, once it found that those claims were non-dischargeable, it could not simply carve off or jettison the ancillary portions of those. And I would refer to Cohen v. De La Cruz on that. My last point is that the court found that attorney's fees applied in her statement of findings of fact and conclusions of law. But she said that she would not grant him. And the right to attorney's fees is under Travelers, under the Travelers case that we cite. So we should not, that was an error for her to stop that and deny those claims at the outset, because they had a contract, Ms. Placaitis, Mr. Roth, which provided for attorney's fees. So it was based in contract. And that was something that the bankruptcy court, once it found that there was non-dischargeability, it had to accept the other components of the claim. So if that's... Okay, got it. Okay, thank you, Your Honor. Thank you. Your Honors, to be clear, the fraud claim relates to the $13,000 loan that Ms. Placaitis made, in return for which she claims she's entitled to a $2.8 million judgment for fraud. A couple of points. The Hernandez case, which we cited in our papers, says that just because a defendant may have knowledge from some other source of what the claims may be about, that is not sufficient. The complaint itself needs to be the source of the facts. That's the first point. The second point is, how do the courts actually apply this relation-backed doctrine? The Williams v. Boeing case, the Ninth Circuit case that we cited in our papers, that case involved racial discrimination in compensation, which the plaintiff tried to add that later when the plaintiff already had a racial discrimination in promotion claim. And what the court said was, despite the fact that it's the same job, it's all discrimination, same employment relationship, the one does not relate back to the other. So we have to be careful not to interpret transaction or occurrence too broadly so as to swallow up these statute of limitations. Same thing in Glover v. FDIC. The first claim was a debt collection based on phone calls to the plaintiff. The amended complaint tried to add in the creditors proceeding ahead with foreclosure despite the fact that a modification agreement had been entered. We're talking about the same debt, the same parties, same transaction, the same loan transaction, and yet the court in that case said no relation back. Similarly, in the Hernandez case, another employment discrimination case, the hostile work environment was a claim, a discrimination based on hostile work environment was the one claim. The second claim was a retaliation claim. Same employment relationship, all stemming from discrimination and assertion of discrimination claims, and yet that was not enough for relation back. Similarly, in the Mail v. Felix case, the Supreme Court case, all of the claims, the petitions for habeas corpus, all arose out of the same trial and the introduction of evidence into the same trial. And the Supreme Court said, no, you're interpreting transaction or occurrence too broadly. That does not qualify for relation back just because they happened in the same trial. The key point is, are they the same facts, or different in type or time? You want to respond to anything he said about a cross appeal? A key point on the cross appeal, and thank you for that, Your Honor, is that the damages that were awarded in, for example, the punitive damages, which I think is the large number that's involved here, the jury did not specify which claims those punitive damages applied to. And the problem is that some of those claims the bankruptcy judge determined were dischargeable. So the challenge then in the bankruptcy trial was to say, okay, we don't know what the jury did. Did the jury award those damages onto those claims that I've determined have been discharged? Well, if so, then the punitive damages are discharged along with it. So what the judge instructed Ms. Plakatis to do at trial was to offer evidence of allocation. Show me how the jury awarded those damages as to the causes of action that are still here, those non-dischargeable claims. Ms. Plakatis ignored the judge's instruction and never offered any such evidence. So that's the problem with respect to that. And the same applies to the attorney's fees interest as well. Thank you, counsel. We appreciate your arguments this morning. That's it. All time is used. Matter submitted.
judges: Pregerson, Noonan, Paez